**In re ELECTRONIC THEATRE RESTAURANTS, INC., Debtor.**

**Bankruptcy No. B84–3052.**

United States Bankruptcy Court, N.D. Ohio, E.D.

April 12, 1988.

**46**

Jerome Leiken, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, for debtor.

Kimberlee K. Kovach, Heard, Goggan, Blair, Williams & Harrison, Houston, Tex., for claimant City of Houston.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the objection of Electronic Theatre Restaurants, Inc. (Debtor) to a claim filed by the City of Houston, Texas (City of Houston). An evidentiary hearing was held with notice thereof having been served upon all parties entitled thereto. Upon argument of counsel, adduced evidence, and a review of the relevant portions of the record, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr.R.:

### I.

This matter constitutes a core proceeding under 28 U.S.C. 157(b)(2)(B), with jurisdiction further provided under provisions of 28 U.S.C. 1334 and General Order No. 84 of this District. The facts of this matter are generally undisputed. The City of Houston caused to be filed its proof of claim for *ad valorem* personal property taxes against two of the Debtor's properties located in Houston, Texas. One property, known as Bissonnet, was assessed 1984 personal property taxes in an amount of $2,295.32, plus penalty and interest of $1,584.92, for a total of $3,880.24. For tax year 1985, the City of Houston assessed Bissonnet personal property taxes in an amount of $2,394.41, plus penalty and interest in an amount of $1,322.91, for a total of $3,717.32. All totalled, the City of Houston seeks $7,597.56 against the Bissonnet property. Debtor's second Houston location is known as Fondren. For 1984, the City of Houston assessed Fondren personal property taxes in an amount of $3,054.84, plus penalty and interest of $2,109.36, for a total of $5,164.20. For tax year 1985, Fondren was assessed personal property taxes in an amount of $3,054.84, plus penalty and interest of $1,687.79, for a total of $4,742.63. Totally, the City of Houston's claim against the Fondren property amounts to $9,906.83. For both Bissonnet and Fondren during tax years 1984 and 1985, the City of Houston claims an amount of $17,504.39. This amount includes penalties and interest of $6,704.98. On December 4, 1984, the Debtor filed for relief under Chapter 11 and, on the same date, ceased business operations in the State of Texas. This matter ensued.

### II.

The principal issues for the Court's determination are three-fold: (1) Whether this Court has jurisdiction to hear the matter; (2) Whether penalties may be imposed where no evidence of pecuniary damage has been demonstrated; (3) Whether a taxing authority can realize interest on non-consensual post-petition tax claims?

In support of its objection, the Debtor (1) challenges the figure used by the City of Houston to calculate fair market value of the subject properties; and (2) contends that the taxes for which the City of Houston seeks priority treatment should be exclusive of any payment for penalty and interest as a priority payment. The City of

Houston refutes Debtor's objection by stating (1) its claim constitutes *prima facie* proof of the fact and amount of the debt and should be accorded a presumption of correctness; (2) the Debtor has failed to timely protest the taxes and has thereby waived such right to do so under nonbankruptcy law; and (3) the amount of the tax claim is solely to be determined by Texas law.

■ In view of the aforesaid contentions it is significant to note that both parties, by their respective conduct, have submitted themselves to this Court's jurisdiction. The Debtor did so by causing to be filed its petition for relief under Chapter 11, and the City of Houston did so by filing its proof of claim. Therefore, the City of Houston's contention that only the Texas law can determine the amount of the tax claim is not well-founded. The Bankruptcy Court has clear authority under § 505 of the Code to determine tax liability.[1] Only where there has been a full adjudication of the contested amount in question does the Court not have authority to determine the tax liability. 11 U.S.C. 505(a)(2)(A). This is not the situation at bar. The adduced testimony reveals that the Debtor filed a prepetition protest before a Texas tribunal but did not exhaust that process prior to seeking relief under Chapter 11. (Testimony of David McLaughlin). Thusly, there exists no impediment to this Court's determination of the subject tax liability per § 505(1)(2)(A).[2] *In re Fiedel Country Day School*, 55 B.R. 229 (Bankr.E.D.N.Y.1985); *In re Continental Credit Corp.*, 1 B.R. 680 (Bankr.N.D.Ill.1979).

■ The Court's attention next is addressed to the treatment to be accorded the *ad valorem* tax claims. Herein, the City of Houston seeks to have its claim treated as a priority tax claim. Its claim is based

upon assessments made against the Debtor's personal property for tax years 1984 and 1985. The Debtor ceased operations on or about December 4, 1984. The subject taxes are *ad valorem* taxes. Under the Bankruptcy Code, § 507(a)(7)(B) accords seventh priority to property taxes assessed before the commencement of the case and payable without penalty after one year before the date of petition filing. Thusly, the priority requirement is two-fold: (1) the property tax must have been assessed prepetition and (2) the property tax must have been payable without an attached penalty within one year prior to petition filing. Herein, the taxes are for tax years 1984 and 1985. Debtor sought relief under Chapter 11 on December 4, 1984. Applying § 507(a)(7)(B), only those taxes for those years which were assessed and were payable without penalty within one year prior to petition filing are entitled to priority treatment. A key determinant is when they were so assessed and became payable.

■ Although the burden of proof is on the objecting Debtor to sustain its objection to a claim, the party seeking a priority status for its claim is obliged to prove that the requisite elements for a priority claim have been met. The subject proof of claim reads in pertinent part:

III. After the time of the filing of the petition initiating this case—the Debtor—became indebted and still is justly and truly indebted to the City of Houston in the sum of Thirteen Thousand Seven and 83/100 Dollars ($13,007.83) according to the statements which are attached hereto and made a part hereof.

The above-quoted language refers to attached statements which comprised four pages captioned "Bankruptcy Tax Statement." Each such statement indicated the

---

1. 11 U.S.C. 505(a)(1): "Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. 505(a)(2): "The court may not so determine (A) the amount or legality of a tax

... if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title...."

2. *See also,* 3 Collier on Bankruptcy ¶ 505.04 at 505–23, 24 (15th Ed.1987).

tax year, base tax, and penalty and interest owed as of June, 1986, for the Bissonnet and Fondren properties. No assessment date is indicated on either "Bankruptcy Tax Statement" to aid the Court in determining when the assessment was made. This is of particular significance as § 507(a)(7)(B) allows a seventh priority for:

> ... allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> (B) a property tax assessed *before* the commencement of the case and last payable without penalty *one year before the date of the filing of the petition;* (Emphasis added).

■ Neither the proof of claim nor its attachments reflect an assessment date or any indication when the penalties were imposed for a determination of compliance with § 507(a)(7)(B). Additionally, the City of Houston intentionally presented no witness testimony in support of its claim (*See,* letter dated 12-3-87 from City of Houston addressed to Clerk of Courts). Having failed to sustain its burden in this regard, the City of Houston's claim is hereby denied priority tax status. Further, the City of Houston presented no evidence to demonstrate that it had sustained an actual pecuniary loss which would serve as a basis for an attached penalty under § 507(a)(7)(G).[3] Having failed to so so, the penalties attached to the City of Houston's claim are hereby disallowed, as no pecuniary loss was established.

■ Additionally, the City of Houston seeks interest on each tax assessed against both properties. Again, it is noted that the City of Houston introduced no evidence other than its proof of claim and Houston Delinquent Tax Statements in support of its claim. Nevertheless, where a claim is oversecured and is nonconsensual in nature, postpetition interest is disallowed. *See, In re Ron Pair Enterprises, Inc.,* 828 F.2d 367 (6th Cir.1987). In the present matter, the City of Houston's claim is oversecured, nonconsensual, and seeks an allowance of postpetition interest. Thusly, the interest payments are hereby disallowed. *See also, In re Lumara Foods of America, Inc.,* 50 B.R. 809 (Bankr.N.D. Ohio 1985); 3 *Collier on Bankruptcy,* ¶ 503.04 at 503–39 (15th Ed.1986).

■ Lastly, the parties are in dispute as to the proper appraisal method to be utilized in establishing a value for the subject properties. The method utilized by the Debtor to determine fair market value was the value established by a liquidation valuation of the property. Citing Texas law, the City of Houston avers that fair market value is to be derived at public sale, and not through a forced or auction sale. It is noted that the court-appointed appraiser's appraisal is identified as "appraisal liquidation." (*See,* Debtor's Ex. # 2). As such, that appraisal method is in derogation of Texas property law which reads in pertinent part:

> Value. The term 'true and full value,' wherever used shall be held to mean fair market value, in cash, at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at public sale, and not at forced or auction sale ... (Texas Property Tax Code, Art. 7149, § 20)

In view of the above-stated definition accorded to fair market value under Texas law, the assessment valuation utilized by the City of Houston will be accepted for purposes of the instant determination.

*Postpetition Taxes:*

■ Of the total $10,799.41 in personal property taxes, $5,449.25 of that amount was levied upon the Bissonnet and Fondren properties during tax year 1985. Although the Debtor ceased business operations in Texas on or about December 4, 1984, it is undisputed its levied-upon property remained in Texas in 1985. The City of Houston seeks priority tax treatment for the amount claimed for tax year 1985. Section 502 of the Code [11 U.S.C. 502(a)]

---

**3.** 11 U.S.C. 507(a)(7)(G): "... allowed unsecured claims of governmental units, only to the extent that such claims are for—(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss."

deems allowed a claim or interest filed under § 501 unless a party-in-interest objects. The Debtor has objected to priority tax treatment of this claim. Herein the claimant has not sought an administrative expense for the postpetition taxes under § 503(b); it simply has filed a proof of claim seeking priority tax treatment for its full claim on both properties for prepetition and postpetition taxes. Thusly, the postpetition 1985 taxes have no priority status under § 507(a)(1). Further, priority tax claim status is disallowed under § 507(a)(7)(B), which addresses and allows priority status only to allowed prepetition property tax assessments. Therefore, the 1985 postpetition *ad valorem* taxes are hereby disallowed priority tax status but will be treated as a general unsecured claim.

Accordingly, the City of Houston's tax claim is allowed as a general unsecured claim, excepting penalties and interest, in an amount of $10,799.41 for tax years 1984 and 1985. Allowance of the tax claim as a priority claim is hereby denied. The Debtor's objection is sustained.

IT IS SO ORDERED.