**In re 499 W. WARREN STREET ASSOCIATES, LTD. PARTNERSHIP, Debtor.**

**Bankruptcy No. 91–01973.**

United States Bankruptcy Court, N.D. New York.

March 10, 1992.

Hancock & Estabrook, Syracuse, N.Y., for debtor; Stephen A. Donato, R. John Clark, Patricia A. Crosby, of counsel.

C. Frank Harrigan, Corp. Counsel, Syracuse, N.Y., Louise A. Magnarelli, Asst. Corp. Counsel.

Costello, Cooney & Fearon, Syracuse, N.Y., for Norstar Bank; Michele Lombino, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of a motion filed by 499 W. Warren Street Associates, Ltd. Partnership ("Debtor"), seeking an order reducing certain *ad valorem* taxes assessed by the City of Syracuse (the "City"), pursuant to § 505(a) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). A hearing on this matter was held on November 26, 1991, and after the receipt of memoranda of law, the matter was submitted for decision on December 9, 1991.

### JURISDICTION

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A, O). (West Supp. 1992).

### FACTS

The Debtor is a New York Limited Partnership which was formed in October, 1985 for the purpose of owning and operating certain commercial real estate known as 499 South Warren Street in Syracuse, New York (the "Property"). The Property consists of a commercial office building in which Debtor leases office space to approximately 17 tenants.

On July 11, 1991, Debtor filed a voluntary petition for reorganization under Chapter 11 of the Code. Since that time, Debtor has continued to operate and manage its business pursuant to Code §§ 1107 and 1108.

However, the Debtor has not paid real property taxes, as assessed by the City, since the second quarter of 1988. The City alleges that the Debtor owes past due taxes, apparently for the years 1988–1991, in the amount of $635,834.83, and based upon a valuation of Debtor's property at $570,025.00. Additionally, for the 1992 tax year, the City has apparently voluntarily reduced its assessment of the Property's value from $570,025.00 to $487,000.00. Based upon this assessment, Debtor's projected real property tax for 1992 is $149,022.00. With respect to its 1992 tax assessment by the City, the Debtor has commenced a review proceeding in state court. Thus, for the purposes of this motion, the tax years in question are the last two quarters of 1988, and the entire tax years of 1989, 1990, and 1991.

For each of the years in question, Debtor failed to file a grievance or otherwise appeal either the City's appraisal of the Property or the actual tax assessments. In this regard, it appears that Debtor took no action whatsoever, and essentially defaulted under state law with respect to the City's determination of its tax liability. Nevertheless, Debtor now asks this Court to adjust its tax liability, pursuant to Code § 505(a), which states in pertinent part:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax ... whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction. (2) The court may not so determine— (A) the amount or legality of a tax ... if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title ...

### ARGUMENTS

Debtor concedes that it failed to appeal the tax assessments prior to filing the in-

stant motion. However, Debtor maintains that due to its inaction, the tax assessments were never "contested before and adjudicated by a judicial or administrative tribunal," and that the Court may therefore adjust Debtor's tax liability pursuant to § 505(a)(1). Specifically, Debtor does not seek to challenge tax rates, but rather, requests adjustments to the Property's assessed value of $570,025.00 for the years in question.

The City asserts that for each year in question, Debtor had ample opportunity to appeal the tax assessments within the period allotted therefor by statute, and failed to do so. Thus, it is the City's general position that because the Debtor is now precluded from obtaining review of the tax assessments in the New York State courts, it should also be precluded from obtaining such a review by this Court. Implicit in the City's argument is the notion that Debtor's tax liability has been determined by a tribunal of competent jurisdiction, and may not now be reassessed.

Alternatively, the City asserts that it will be prejudiced by re-litigation, and thus requests that the Court, upon a finding that the Debtor's tax liability may be reviewed, exercise its discretion to refrain from entertaining Debtor's challenge.

### DISCUSSION

■ Ordinarily, where a taxpayer fails to avail itself of state remedies to challenge state or municipal tax liability, federal courts are barred from entertaining challenges to such liability. *City Vending of Muskogee v. Oklahoma Tax Comm'n.*, 898 F.2d 122, 125 (10th Cir.1990) (citing *Sacks Bros. Loan Co. v. Cunningham*, 578 F.2d 172, 175 (7th Cir.1978)); *In re Ledgemere Land Corp.*, 135 B.R. 193 (Bankr.D.Mass. 1991). However, as previously indicated, if a taxpayer is also a debtor in bankruptcy, Code § 505(a)(1) authorizes the bankruptcy court to determine tax liability unless such liability was finally determined through a pre-petition contest and adjudication by a judicial or administrative tribunal. *See City Vending of Muskogee v. Oklahoma Tax Comm'n*, 898 F.2d 122, 125 (10th Cir.

1990); *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 925 (3d Cir.1990); *In re Ledgemere Land Corp.*, 135 B.R. at 193; *In re Washington Mfg. Co.*, 120 B.R. 918, 919 (Bankr.M.D.Tenn.1990).

■ Here, it is questionable whether the Debtor's tax liability has been "adjudicated by a judicial or administrative tribunal," simply by virtue of having been assessed by the City. *See In re Ledgemere Land Corp.*, 135 B.R. at 195, (finding taxes had not been adjudicated simply by virtue of having been assessed). This question need not be resolved, however, for in the instant case, neither the Debtor's taxes nor the assessed value of its Property has been previously "contested" within the meaning of Code § 505.

In support of its position, the City cites two cases for the general proposition that a tax controversy may not be revisited in bankruptcy court when a debtor has failed to timely contest the matter pre-petition. In *In re Qual Krom South, Inc.*, 119 B.R. 327 (Bankr.S.D.Fla.1990), a debtor's claim for a federal income tax refund was denied under Code § 505 because the statute of limitations had run on such claim outside of bankruptcy. However, the result reached in *In re Qual Krom South* was expressly rejected in *In re Ledgemere Land Corp.*, as ignoring Code § 505's "broad jurisdictional grant to determine taxes 'whether or not paid'," and for not "taking into account the goal of § 505 of preventing prejudice to creditors by reason of the debtors' default." 135 B.R. at 138. This Court likewise agrees with the *Ledgemere Land Corp.* court's analysis of the *Qual Krom South* decision.

The City also cites *In re Galvano*, 116 B.R. 367 (Bankr.E.D.N.Y.1990), wherein the debtor was the principal officer of a corporation which was also in bankruptcy in another district, and which had had its tax liability contested and adjudicated in a state administrative proceeding. Because the debtor's individual tax liability was derivative of the corporation's, the *Galvano* court found that the debtor's liability had essentially been finally determined in the corporation's state administrative proceed-

ing, and thus refused to entertain debtor's motion to review his tax liability under Code § 505.

The Court notes that the *Galvano* court stated that its refusal to review the debtor's tax liability was also based upon "the Debtor's failure to timely file a petition challenging his individual liability under the first assessment." 116 B.R. at 374. However, it is clear that the decision is based primarily upon the fact that a prior contest and adjudication of the debtor's liability had taken place in state court. Moreover, to the extent that the result reached in *Galvano* is, in fact, grounded upon the debtor's failure to timely challenge the assessment under state law, the decision is clearly contrary to the weight of authority on this issue. *See Ledgemere Land Corp.*, 135 B.R. at 193; *In re A.H. Robins Co., Inc.*, 126 B.R. 227 (Bankr. E.D.Va.1991); *In re Tapp*, 16 B.R. 315 (Bankr.D. Alaska 1981).

In *In re Ledgemere Land Corp., supra,* the debtors therein took no pre-petition action to reduce certain tax assessments. Thus, the court held that the debtors could contest in bankruptcy court tax debts for which they had failed to file tax abatement actions under Massachusetts law. Because no abatement actions had been commenced, the court reasoned that the debtors had essentially defaulted, and therefore that their tax liability had not been previously contested within the meaning of Code § 505. *Id.* at 196. In so ruling, the court noted that, although the debtors had failed to file a timely abatement in a Massachusetts court, "[t]he broad grant of jurisdiction contained in § 505 makes no reference to time periods imposed by state law." *Id. See also City Vending of Muskogee*, 898 F.2d at 124 ("In the context of a bankruptcy proceeding ... a federal court may have jurisdiction to review a state tax assessment where the taxpayer has failed to pursue state remedies." (citations omitted.))

It is thus clear that when a debtor allows an adjudication of tax liability to be taken against it by default prior to bankruptcy, such liability has not been "contested" within the meaning of Code § 505. *In re*

*Ledgemere Land Corp.*, 135 B.R. at 196; *In re A.H. Robins Co., Inc.*, 126 B.R. at 229; *In re Tapp*, 16 B.R. at 320. *Accord In re Washington Mfg. Co.*, 120 B.R. at 918. *Cf. In re El Tropicano*, 128 B.R. 153 (Bankr.W.D.Tex.1991) (debtor could not have value of his real property redetermined under Code § 505 because the issue had been contested and adjudicated by virtue of reduced assessment which had been negotiated with taxing authority pre-petition) (citing, *inter alia, In re Back Bay Restorations, Inc.*, 118 B.R. 166, 170 (Bankr.D.Mass.1990) ("... arms length settlement agreement meets the requirements of being contested and adjudicated")).

Here, because the Debtor's tax liability was not contested pre-petition, this Court has the authority to review such liability, pursuant to Code § 505(a)(1). However, the Court's authority in this area is discretionary, *see, e.g., In re Galvano*, 116 at 372; *In re El Tropicano*, 128 B.R. at 160–61, and the City has requested that the Court refrain from reviewing Debtor's tax liability. The City asserts that it will incur substantial expenses re-litigating the issue, and that such expenses will ultimately be borne by innocent taxpayers.

Courts consider several factors when deciding to undertake a review of tax liability under Code § 505. Among such factors are the complexity of the tax issues to be decided, the need to administer the bankruptcy case in an orderly and efficient manner, the burden on a court's docket, the length of time required for trial and decision, the debtor's financial structure, and the prejudice to the debtor and the potential prejudice to the taxing authority. *In re Galvano*, 116 B.R. at 372 (citing *In re Hunt*, 95 B.R. 442, 445 (Bankr.N.D.Tex. 1989)).

Application of the aforementioned factors to the present case militates in favor of this Court reviewing the Debtor's tax liability. The complexity of the tax issues involved would appear to be relatively uncomplicated, as the Debtor is a single asset entity and is simply challenging the underlying valuation of its property for tax purposes. Thus, any review by the Court

under Code § 505(a)(1) would be focused upon the single issue of proper valuation. Furthermore, while the Court's docket is perhaps overly burdened, and while some prejudice may inure to the City, the Court concludes that such factors are outweighed by the prejudice that would inure to the Debtor's creditors if no review is undertaken, and its tax liability has, in fact, been improperly assessed.

While the Debtor's motion is styled as a request to reduce its tax liability, neither party has presented any evidence with respect to the substantive merits of such liability, and both sides appear to concede that, for all practical purposes, an evidentiary hearing must first be scheduled.

Therefore, based upon the foregoing, the Court grants Debtor's motion insofar as it seeks review of its tax liability for the tax years in question, and an evidentiary hearing with respect to such liability will be scheduled after a Chambers conference with the parties.

IT IS SO ORDERED.